All right, the first case we're going to hear this morning is Walker v. City of Charlotte. And I guess, Mr. Perry, are you the first one up? Yes, sir. All right. If I may very quickly, may I introduce Nadara McCord? Sure. This is a female. She is Nadara. She's the first one to come and see me already today. Okay. She's one of the highest-ranked grade students in the school, and she wants to be an astronaut. Okay, good for her. You'll let me know when to begin, or should I? I am Shane Perry for the plaintiff appellant, Ms. Walker. And, Your Honor, I've got about five minutes that I want to get on record. If the court has questions, would you like to start with the questions? And I'd be happy to start there as well. You can make your presentation however you choose. Thank you, Your Honor. We'll ask a question if we have one. Yes, Judge Neumann, I'm sure you will. May it please the court, there are three basic parts to this appeal. First was the issue of bifurcation. I would like to point out that there was no ruling at the October 23rd hearing, the 12B6 hearing. The court never discussed bifurcation. In fact, it's not in the order. It was basically the result of the order from the 12B6. Well, I might suggest that this is not bifurcation. This is really a limited order for discovery. And, of course, that's done oftentimes, for instance, in connection with motions, a personal jurisdiction, a court will issue, say, discovery continue on personal jurisdiction. We'll decide jurisdiction first. And in this case, as I understand it, the court thought that the dispositive question was duress and decided that let's limit discovery to that and see what happens since that's dispositive. And that seems to be a fairly discretionary decision for the judge, isn't it? Exactly. It is a discretionary decision. And to have discretion, the court would need to have an analysis. The Companion Propane Court points out that they were discussing bifurcation, but they were saying that it's determined on facts and circumstances. And the court never brought up the idea that this case would be, and I'll use the term bifurcated because that's the effect of it. It's not bifurcation. Bifurcation is when you separate a trial, elements of a trial. You separate liability from damages or something else. This was discovery.  Yes, Your Honor. It's a matter that's rather much in the hands of the trial judge to make a determination on how to conduct discovery. And we don't tend to wade into that too much. You may have a point in terms of how you think it should be handled and the different ways in which it is, but it's pretty much in the trial judge's determination. It is. And if we had had an opportunity to argue that with the court, that it should not have been split the way it was, limited initially the way it was, the court should take, as the Companion Propane said, all of the facts and circumstances into it, in any discretion or dispute. Well, do you agree with the court that the main issue seems to be the undue influence? And until that's decided, if you win on that, then the other issues would be discoverable, I guess. But if you lose, then, I mean, that kind of ends the case, right? Yes, Judge Benjamin. One of the problems was that the court, of course, took that decision away from the jury. And the court, if you look at the language that the court used during the hearings, was that he was making the decision that there was no undue influence. Considering facts, and I can read that from the hearing transcript, if you'd like, but he made decisions on facts. He first found that there were no facts and then talked about the facts that he used to make his decision. I think that the judge took this clearly out of the hands of the jury. Well, that's the crux of the case. This is a summary judgment. The evidence is viewed in a light most favorable to you on it. And the issue before us is, is there an issue for the jury to determine? I think one of the significant things, this is controlled by North Carolina law? Yes, Your Honor. And the question then is, is the issue of undue influence a question of fact, or is it a question of law? Quite clearly, it's a question of fact. The court has discussed that. North Carolina Supreme Court several times has discussed that it is a jury decision. And the Fourth Circuit has also decided that in the McMurray case. But Barbie, 190 NCAP 319 at 358, said it's a jury decision. Well, I would think there's no question that it would be. It's just as negligent, but the question is whether you advance enough facts to raise a dispute on that. And in this case, as I understand it, the city simply held fast to its $45,000 offer and decided it didn't want to offer any more. And that's all they did. And it's hard to conclude that that was undue influence. Now, she had personal circumstances that were difficult and obviously sad. But she did receive a settlement which was above the estimate to fix the condition, and she chose to take that. And she said she chose to take that. And she had a lawyer, and she chose to take it because she couldn't delay. She needed to have her house back. And that's all very understandable. But the question then is, while it's a question of fact, you still have to present enough facts to show there's a tribal issue on that issue. Yes, Your Honor, that is exactly right. And so we did produce facts. Now, if you look at the Curl case, it discusses the facts for the jury to consider, not the judge. First was her economic condition. She is in form of Paul Paris before this court. And in her affidavit, by the way, the first RAC, that was a signed affidavit, where she wrote on it says, I'm homeless. That was notarized. That's a signed affidavit. But then later when she produced her affidavit, she discussed very clearly her homeless condition and her impoverished condition. The Curl case, the Curl court said her age. The court can take notice that she's 78 years old. Her lack of bargaining power. Many cases talk about the government. The government has superior bargaining power. Who's talking about Lockheed Martin? You know, the government has superior bargaining power. These are all factors that the court, I'm sorry, the jury must consider. The city didn't have to offer anything, did it? They could have said, we prefer, we don't think we have liability and we're going to go to trial. Would that have been undue influence? I mean, that would have, the city chose to make an offer, but they didn't have to choose to do that. Judge Neumar, they had a program is what it was. It was a $15,000 program. Well, I understand that, but then she retained an attorney and the city, the attorney negotiated a $45,000 offer. That's not completely the case, Your Honor. What happened was she didn't hire me. I was pro bono, and I argued with them, and they kept saying no, no, no. And we got on the news twice, and they got embarrassed, and then they suddenly changed the offer. And by the way, the new RAC that they put out said she couldn't, see, the initial RAC said that she could sue for certain things. The new one, no suit of any kind. She couldn't bring in certain evidence. It struck certain evidence from any kind of a case. It was a terrible contract. And again, these are factors that North Carolina said the jury is to consider, and we have evidence for every one of these factors. I think that's the key of your case is the determination of all these factors to be considered in determining the fact of whether there was undue influence. That is more appropriately determined by a jury. The judge said essentially what Judge Neumar has parodied here, that is it was a difficult decision, but it was voluntary. The question is, is that a question for the judge, or is it a question for the jury? Absolutely. And if it's for the judge, then it must be that viewing this evidence in a light most favorable to your client as a matter of law, it is against it in order for us to uphold this on summary judgment. It's the only question that doesn't go to trial. It doesn't mean you would win a trial. It simply means that it is a matter that ultimately could go before a jury. But I will turn to a question, and that is I think the factors here are strongly in favor of some indication of undue influence. But there is this element, this factor here that you, the lawyer, represented her. And the cases, there are cases in which there have been cases which lawyers have represented, but the question is, did it go beyond a factor to being a decider for how a summary judgment should be determined? The fact that she had the advice of counsel in this process. Admittedly, that advice you gave was rather interesting because it just said the whole time this is undue influence. She has no choice in it. And I think that's the troubling part about this case is if this woman had money, she wouldn't have had to do this. But she's living in a house and she's homeless. And the city of Charlotte floods her house full of sewer from an outside source. I guess it determines if it comes from there. I don't know if they admit it liability or not. But the house is flooded with sewer. She cannot live in it. And I'm not sure as to whether the $45,000, was that above what it would take to repair it? Because I understood for the record it was nowhere near it. Or is that true? Well, Your Honor, their preferred vendor said that it would be $38,000 to get her in the house. Now, understand that she and her husband spec built this house in the 80s. And she paid for this house. And I was trying to work with Cardinal, trying to say just get her in so she can at least sleep on the floor. Because she told me I'm going to be sleeping in my car with my dog. She called me up and said, I don't know what to do. And so I said, I'll do what I can. And he said, I can get her in. What does it mean, $38,000 to get her into the house? That means she doesn't get furniture. She doesn't get clothing. She doesn't get her time being away. She worked two days a week at a church. That was her job. But did it include all of the, I mean, there's bacteria, there's all kinds of things that get into a house. Right. When sewer gets into it. That's right. You just can't move it to a house. I kind of know that. So I'm trying to understand, what did the $38,000 include? There was abatement included. But I'll tell you, they didn't take out some things they should have taken out. Because all of that is still in her, in the floor joist. It's all still soaked in her floor joist. That was an estimate provided by a contractor, right? It was, cardinal. And, again, that $38,000 doesn't cover a stick of furniture. What was the amount that she contends was needed to cover? Well, that was the thing. We offered to settle it for $65,000 before I ever got hired. And they said, no, we're not giving you that. You get nothing. That's a factor, by the way. So $20,000 is what you're talking about. Not $20,000, because that's what she was going to settle for. $45,000 plus $20,000 is $65,000. Yes, Your Honor. You offered $65,000. You would have been happy with that. That's $20,000. No, sir, Your Honor. We would not have been happy with that. But it would have given her a chance to buy some furniture and clothing. You just avoided my question. It turns out if you offer someone, that's a stronger case than even where we are now. You offer to settle. You do it. Then there's a strong belief. There's no way to do influence on that if you offer it. That's $20,000. So we are arguing this case is about $20,000 based upon your statement there. No, sir, Your Honor. That was we were just trying to keep her from sleeping in her car. And I said, well, if I offer them $65,000. I didn't ask for your motives. I'm saying you offered it. That's all I need to know. You offered $65,000. It puts in my head, at least in terms of what we're talking about here that could have settled the case, is $20,000. Had they accepted your $65,000, you wouldn't be here today. Is that correct? Well, if they had signed it, we probably would have signed a contract on that. But that's if. I don't know. If you offer $65,000, they accept you're not here today, correct? Well, Your Honor, I would say probably not. But we weren't there. How are you going to be here? Well, I'm just saying. If you think you've got undue influence is hard, how are you going to get it when you offered it? I don't think that I don't know for sure that she would have signed it. Understand I'm trying to negotiate with the city to get her back in her house. You offered it. She didn't offer it. I spoke for her, Your Honor. But you hadn't consulted with her before you offered $65,000. Well, she hadn't had a chance to make a final decision on it. I did offer, and they did not respond to that. They said no. But, again, I was trying to save this woman's life. She can't, at 77 years old at that time, sleep in her car in the winter. Your efforts in what you're trying to do, Mr. Admiral, what you're ultimately trying to do, I'm just talking about the law on it, and I'm just wondering if it is a $20,000 case, it may well be something that can be handled without us having to issue an opinion on this case if it comes out. But that's something you guys can discuss when you go out in the courtroom on this. But, Jim, I'm just amazed. I was thinking maybe the figure was going to be that you had offered was something different. But an offer is, well, that's your offer, you say. Okay. All right. And that is a factor, Your Honor, to consider by the jury. And all of these factors. And, by the way, it's about me being an attorney on her case. The Curl case, when it was listing the factors for the jury to consider, attorney was third on the list. Age and mental and physical condition was first and second. They didn't even list it as the most important factor or first factor. It's just a factor for the jury to consider. The judge does not get to say you have an attorney so the jury doesn't get to consider the other factors. It's one factor. So, just a thought. If we rule in your favor, aren't you going to be a witness in that case? I don't think I should be, but if that's the way . . . The question is whether you should be. You're the one that has a lot of direct evidence on this, and I'm just wondering. I just throw it out for some thought for you in terms of if it did go that way. The question is, should you be the lawyer handling this case? I think an attorney should never have to violate attorney-client privilege ever for any reason, and I'll go to jail on that, but I think in this case the judge might order and I might do it. I might have to. I don't know how hard I would fight in this case because there really wasn't a lot to talk with her about, but I think that that is a sacred oath that I take with my client. It's a sacred duty. So if I'm called to do it, in this case I think I might because there just wasn't a lot. There's a lot of situations where lawyers end up having to testify because of the advice that they give to the client, so that's not anything unusual. But don't you, in considering the factors that we're to look at, one of those is did this victim have independent advice? And she did. She did. And so in looking at this, why do you, it seems as if the district court judge is saying that there's no genuine issue of fact for the jury to decide because of these factors of having counsel and counsel advising and the amount of money going from $15,000 to $45,000. So what's the genuine issue? What's your best case for the genuine issue of fact on summary judgment before the district court judge? The jury gets to decide if having an attorney meant there was no undue influence. The jury gets to decide that. It is a fact, and it is a factor, one of about seven that the coral court listed, that the jury gets to determine. We have facts before the court on every single one of these, and the court said the jury doesn't get to hear those. I think this is the most important. I think it's overwhelming, and the jury doesn't get it. But it's not. It's one factor. Yes, she had an attorney. That's one factor that the jury gets to hear and decide on.  I see we're beyond our time. You have some rebuttal. Thank you, sir. We'll hear from Mr. Bader. Good morning, and may it please the Court. Stephen Bader here on behalf of the athlete of the city of Charlotte. This court should affirm summary judgment for Charlotte because Ms. Walker's evidence does not forecast a triable claim for undue influence. In North Carolina, undue influence happens when a defendant asserts such control over a plaintiff that the plaintiff's decision is effectively the defendant's. And what the evidence in this case shows is that this was a very difficult decision for Ms. Walker because of her personal circumstances, but it was her decision. And on those undisputed facts, there is no question for the jury. The court really can start with the narrative affidavit that Ms. Walker submitted after the hearing on summary judgment. That's at pages 216 and 217 of the joint appendix. And what she writes in that narrative is she's putting this together. These are her words. Her lawyer has helped her, that she was concerned about the uncertainty of litigation, the time, the expense, and the outcome. She needed the money, and she understood that what the city of Charlotte was asking her to do was release her claims. It was a tough choice, but she decided to do that. Well, you know, undue influence in North Carolina is a jury question. We are viewing this in a light most favorable to her. There may be things against her, but it's a light most favorable. And North Carolina presents in a jury question. They've actually been pretty lenient in terms of getting this issue to North Carolina. A number of court of appeals cases, Supreme Court cases, deals with that. And the issues here that come up, what are those factors? I mean, she's an elderly lady. If you consider late 70s elderly, she has some physical and mental conditions to deal with. She's in a situation of distress because she's, I guess, living in a car. She's going to be homeless. She's not in a position to exact anything against the city on it. The city has, and you think about what actually happened, she's in a home. She hasn't done a thing, and it becomes flooded with raw sewage. And that alone, I don't know what the prices are in Charlotte. But I don't know anyone that would fix that for $38,000. I mean, but I don't know. It may well be, because we're allowing the evidence here. But when you come down to it, the factor here that's the strongest here is she's represented by a lawyer. But the question is, I don't think that's dispositive. That's something a jury would have to determine was, does the presence of a lawyer under North Carolina law? Because under influence is a question of fact. So the only question here is, does a jury get to decide this case? And that's the posture. We could talk about all the things against her. But it's the things that's for her that really form the basis for whether summary judgment, whether there's an issue of fact that exists here. And all of these factors are there supporting the undue influence call. But admittedly, the facts are difficult here, because she did sign this. Albeit she wanted to add that language in there that I'm doing this undue influence. It's a strange case, I would say. I don't think I've seen one like it. Well, let me try to address your- Let me add it. Yeah. The only reason we're here is because this woman is poor. If she wasn't a poor woman, she wouldn't have had to put up with this. And poor people whose houses are flooded under these circumstances, the city of Charlotte puts a $15,000 cap on what we're going to pay you if we flood your house through our negligence or whatever, I don't know, with sewers. I mean, I'm thinking the initial ones, $15,000. Then it goes up after the newspaper to $45,000. And it's something to consider that if this woman was not poor, this would never have been here. And she would have had some options to deal with. But when poor people, if you can't fix it yourself, you can't do it, you either live in a house with sewer or you take the sub, whatever the amount, and try to do the best you can with it. And all the other things in there, your furnishings and all your clothes or whatever is dealt with, you just got to live with that. And there's something there as to whether that goes to undue influence is another question. But it is a factor in this case. You know any jury that get that case. That's the problem. It's not that the jury can't decide a case, but that's a fact the jury is going to pick up on in any case like this if it does survive summary judgment. Let me try to address those various concerns, Judge Wynn. So first of all, the program that you're referencing is not a cap on what somebody could get against Charlotte. It is a program that Charlotte has in place that says if you have flooding through our sewer mains, you are entitled to repair costs and restoration up to $15,000 without having to show fault or otherwise. If it happens- Did you have to sign a release to get that of being entitled? The release that you would sign would just reflect that you were paid under the program, but not that you would otherwise be releasing claims. So you could take the $15,000 and still sue? I don't want to misspeak, and I'm not- Because otherwise there's a cap. Well, the cap doesn't apply if a negligence claim is brought. So if somebody were to bring an action against the city of Charlotte and say, your negligence led to this damage to my home- I'm trying to understand what you're just saying. You're saying that when the $15,000 was offered, you take the $15,000, you still can sue? So she should have just taken the $15,000 and then brought this action? No, I don't- Just to lend a little additional light, my understanding was the $15,000 was a no-fault program, and if fault is alleged, then the normal traditional court case could go ahead and negotiations. Is that the correct understanding of the law there? That's right, and I believe the- But let me make sure I understand what you just said there, because I just asked you, if she takes the $15,000, can you sue? If you take Judge Niemeyer's version, yes, you can because it's no fault, and if you have fault, you can pursue that. This is just something to help you out administratively. So my question is, if she had taken the $15,000, could she have brought this action without being impeded? I don't believe that she could. Well, how is it no fault? Because she doesn't have to prove a case. I got that for the $15,000. Right. But it doesn't- the question is, of course, has to do with the release, not the question of whether or not it's no fault. We know it's no fault. They gave her $15,000, but the question is, when you give her the $15,000, do you put conditions on it so that she cannot sue if she has damages of $115,000? Well, I believe that she would, but that would not be unlike any plaintiff who says, you engage in tortious conduct, you are liable to me for a certain amount, I'm not going to turn to your program which could allow me to recover a lesser amount irrespective of fault, I'm going to pursue a lawsuit in the tort system, prove up my claim, and prove up my damages. So she wouldn't be allowed to take the $15,000? Yeah, that's correct. That's the problem. Because the $15,000 doesn't fix her house at all. She's poor. She cannot get in a home. She has no money. She's old. She's living by herself. She is in a very vulnerable situation. Had it been a different situation in which she had money or she had family or some others to help her, it's a different situation. It is preying on the poor. It is no more than that, and it is a program. Maybe if you do have the $15,000, you can do it. Who would take it? The only time you take it is when your damages were $15,000 or less. But this program doesn't matter. I mean, where does $15,000 even reasonably cover a house flooded with raw sewage? I mean, why would you even offer that? It just almost makes no sense when you think about it. It's like I'll give you $15 if you'll just take that and be done with it. It doesn't matter if it's $15 or $15. There's no connection between $15 and that amount of money. Her damages are just on his face way more than that. You don't need a contractor to come in and tell you that anybody who has a house flooded with sewer, that damage is going to be a lot more than $15,000. Let me try to address a lot of this. Number one, the city of Charlotte is under no obligation under North Carolina law to have any program at all. Probably shouldn't if you're going to treat people like this. You should just allow them to just sue. Why even dangle this out in front of them? And then take the damages for doing nothing at all, for not settling, and whatever may go with it. I mean, this, but again, I'm not faulting the city of Charlotte. The city of Charlotte has $15,000. It works for those who have damages maybe 5 or 10 or 15 or something like that. But someone who has this kind of damages, it clearly cannot work. And to even put them in a position where they can't sue to get it. Well, they can sue to get it. There's no reason she can't sue to get it. She can take the position that what's available under this program is insufficient for her damages and she wants to bring a lawsuit. There's nothing that would preclude her from doing that. And you would not come into court and say that she's taken $15,000 and the matter's been settled? Well, she wouldn't take, at that point, she wouldn't take the $15,000. We're being circular. But doesn't your, the contractor with the estimate of the $35,000, I think is what she ended up with. $38,200. $38,200. $38,200. That was the city's contractor, right? That wasn't an independent contractor. The city had a list of preferred contractors, and that was the first one on the list. And so Ms. Walker contacted that contractor and asked them to put together the estimate, and that's what they put together. All right. And then you offered the $15,000. That offer was made before the contractor came in? I think that's correct, yes. Okay. I guess the difference is, really, if you look at this, if I understand it correctly, the $15,000, if somebody's damaged and assumes that there's not too much damage, that $15,000 is no fault, nothing has to be shown, you get $15,000. If you have bigger damages and you believe the city is liable, now, in this case, I'm not sure the city was negligent. I mean, in this case, somebody put something in the sewer line, unbeknownst to the city, and it blocked it up. So it might have been a very tough case to get to proceed in the litigation, and I'm sure the attorney advised her of that problem, too. I mean, we don't know who clogged up the sewer, but it wasn't the city, according to the facts alleged in this record. And so she now is facing $38,000 in damage, and she can't take the $15,000, and she decides she's going to go the route of suit, and the city negotiates and gives her $45,000. Right. She feels necessary to take it. Well, that's right. The question is, undue influence under North Carolina law uses the word overborne, and the person undue influencing her has to overbear her such that that person's decision is her decision. That's exactly right. And there's no evidence that somebody else made that her decision. She had a difficult situation, there's no question. But overbearing somebody has to be some other person, either the opposing party or maybe her attorney had to overbear her, but I'm not sure that's so because the attorney has his own ethical obligations. Certainly. I don't think anybody's suggesting that. But, yes, I mean, that is what she needs to show under North Carolina law. It's not her decision. It's effectively somebody else's decision. That's what they use in the case after case. It has to be tantamount to somebody else's decision. Right, right. And that's, I mean, I think everybody is sympathetic to Ms. Walker's situation. It's very unfortunate. But, you know, the civil justice system depends on finality and certainty. And so parties to a dispute will say here are the terms that we're offering, here are the terms we're countering with. Ultimately, you know, if parties come to an agreement and that's memorialized in writing, they need to be able to depend and rely upon that. I mean, that system doesn't work if somebody can say, yes, I did ultimately accept what you offered, but my personal circumstances were such that I didn't think I was best served by pursuing further litigation. Is this a damages case or is it a question of liability in question? Is liability in question here? Because this, as I understand, this occurred outside the house in the lines there. I'm pretty certain that when things happen in those lines outside, that's kind of outside of the household for a time. Depends on where it happens or how it happens, but there are a lot of factors involved. But that's not an issue for us. The issue here has to do with, in terms of this release and whether or not there's undue influence. Not a question of who's liable for it. It may well be, but I don't think I've heard anybody get up and say the city is not liable. Or it is conclusively at that point. We've maybe not reached that. I'm not saying it's been decided. But in terms of what's going on here, the question, again, goes back to, and you said she didn't have to take the 15, she didn't have to take the 45 if she wasn't poor. That's the point I'm making. Is that you have a factor in here that you are dealing with citizens who, those who are poor, cannot afford, may be homeless because of some act they allege. And a light most favorable to them, you have to accept, is caused by the city. And in response, the city then puts them in a position where you either sleep out in this car, it's fall in Charlotte, it's going to be cold, or you're going to be homeless. Or you take this and you can minimally get back in your home, but you will not be compensated for the damage that afforded for what you suffered here within your home, if because you are poor. The difficulty with that, Judge Wynne, and I understand your sort of policy level concern, but the law says that by signing the release, that's not your decision. And the record here shows- No, there have been cases in which undue influence has been upheld where there have been releases signed. A number of cases on that. The signing of the release itself is a factor. A jury gets to decide. A jury could agree with you totally. Sign the release. You had a lawyer. So you don't win. Or you could say, she's an old woman. The city should have done this under this circumstance. The city pressured her. They knew she didn't want to do it, and they knew her circumstances. And I mean, you're shaking your head. I'm going to say these are factors. I'm not saying they weigh against you. I'm not saying they weigh for you. I'm saying factors that the jury can decide. If I could just address that, though. We're talking about evidence in the record. There's no evidence in the record that Charlotte twisted her arm or presented an ultimatum or did anything. They said, look, you're asking us to just pay you without any consideration of fault or negligence. You are making a demand. We are going to pay you this amount of money. You don't have to take it. In fact, she did initially sign, I don't have a choice, I'm homeless, when she first signed the release. And the city of Charlotte said, we're not going to accept that. So if she wants to sign the release, she can, but she doesn't have to. And at that point, she signed it unaltered. So I think anecdotally there could be sort of some argument or suggestion that she was strong-armed by the number. But as a factual matter, there's no evidence to that effect. And that is the difficulty when you look at the case law, because typically this comes up in estate disputes and things of that nature, where you've got somebody who may be infirm and is having one-on-one private conversations with another person. And after those conversations occur, they make a change to their estate plan to that person's benefit. And in those kind of circumstances, our North Carolina courts have been willing to say, the jury can hear that evidence and decide, given the individual's potential competency limitations. So when a lawyer communicates, I'm thinking of communications that she's losing her housing, sleeping in a car, will be sleeping in a car. She has no other options. She has no choice but to sign this out of desperation. She's in her late 70s. She won't last long living in a car. I mean, that's not something- But the difficulty, Your Honor, is that Charlotte could just say it's a 15,000 cap or sue us. And that wouldn't give her a claim for undue influence. She wouldn't say I have recourse against you for undue influence because by not offering me what I wanted, you have forced me to bring a lawsuit. That doesn't make any sense. Well, this seems something that you've got someone in a desperate situation, and they say they have no choice, and you offer them some money. It's like if you're drowning and you have to give, you throw a paddle. You can take this paddle if you want or not. If you didn't take it, you're going to drown. You take the paddle, and he says, well, now that you took the paddle, you can't, there's nothing else you can claim I did that's wrong on it because I gave you a paddle, even though I'm the one to put you in. Well, I think the problem with your analogy, as I understand it, is that Charlotte didn't put her in the water or in the drowning. Well, no, because this is not a situation. That analogy may work if Charlotte said we're at fault. We are at fault for the sewer loss. We agree we're at fault for the sewer loss. What if she alleges Charlotte is at fault? She didn't. She didn't allege that Charlotte, she didn't say that Charlotte was at fault. She never put forth any evidence to say that Charlotte's negligence caused this. My concluding part, I just want to say this. I mean, this really is a question of does the civil justice system going to let parties settle cases or not? Because if they're both represented and one side says these are our terms, the other side says I don't really like them, but I'm going to take them because that's what I need to do, the system breaks down if that just turns into a lawsuit for him to influence after the fact. And so for those reasons and other reasons briefed, the court should affirm summary judgment. Thank you very much. Thank you. All right. Mr. Perry, you have some rebuttal. Yes, Your Honor. A couple of things I want to, excuse me. May it please the court, I want to correct a few issues. Every single case that has to do with undue influence comes from a contract that was signed. Every case. You know, the problem, there's a fundamental underpinning here is this is a lawsuit where you're asserting that the city did something wrong, and the city should therefore answer for damages. The city takes a position, at least on this record, that you have to prove it's wrong because it's not going to confess that it stopped up that drain. There was some contract as material in there, put in there that stopped up the drain. So the city could say we're not at fault, sue us. In that circumstance, you would have no basis to be here. And what the city says, we have a program that with no fault you can take 15. She wanted that first, but then she got the estimate and hired you, I guess, and negotiated the case. But the negotiation of every case balances liability and damages and the decisions. And it seems to me she didn't have to sign it. She could have litigated it if she thought she was right. But the city didn't confess negligence, and the city has no, that I know of in this record, has no absolute liability. You would still have to demonstrate a fault on behalf of the city with respect to who clogged up that line. And I think that might have been a tough situation. You might have ended up with nothing. Not at all. And so the question is when you demand 65 and they say 45 is our max and we're going to hold fast to that, that's just typical tort litigation settlement. And the woman was in dire straits, and she said I'll take the 45. That's the best I'm going to get in this. And I may not get any. I'm sure you advised her that in litigation you may not get any. I'm sure you would have to. Your Honor, the factors about how this got clogged up, it was way down the street. Well, not way down the street, but way out of her yard. It wasn't in her house. That doesn't have anything to do with it. The thing is what caused the backup? And the city didn't cause the backup. The city did cause the backup. Somebody clogged it up. We have an expert witness who's going to testify about that, and we did not. It's not on the record. It's not because we asked to have discovery on that, and the judge would not let us have discovery on that very issue. I understand, but we're here in a situation where we're negotiating a settlement, and we're not trying the negligence case. You have to prove negligence on the part of the city. And the only evidence is that the line was clogged by, and there's a description in the record of what it was. What is it, contract? Sheetrock tape. Sheetrock, okay. And that clogged up the sewer. There's no allegation that the city put the sheetrock there. Somebody else did. So it doesn't matter whether it's in the house, outside the house. It's down three blocks. It caused her, that sheetrock caused her damage. And so now she's asserting that the city's liable. Well, she might be able to get a claim. She might not. But that's what litigation's about in the tort system. And so there was a negotiation. You were able to get the city to go up to $45,000. She had a $38,000 estimate from a contractor. You gave her $45,000. They offered $45,000. You demanded $65,000. They wouldn't budge. And so now you could decide we'll go to trial or we'll accept. Now, her circumstances, she made the decision. And, as a matter of fact, it clearly was her decision because she wrote on there, I'm protesting because I'm poor. And that evidences that's her decision. And then the city said, well, we can't accept that. And so she did make the decision to sign a clean settlement. So isn't there a problem here? The city didn't do anything to overbear her. Well, there's a couple problems with this analysis. First, the city did not try to bring in any other defendant to counterclaim against someone else. They didn't threaten her. They didn't say this or that. They just held fast to a position of their assessment. And I don't understand what's wrong with the city assessing its liability and saying we think the most that we should pay on this case is $45,000. Your Honor, the idea of having an attorney is one single factor. Well, let me ask you this because I think Judge Neumeier brings up a good point. One of the things that you have to show is this overbearance by the city. And I'm not sure if there's anything in the record. Can you point me to something in the record that shows the overbearance? It says it has to be more than just mere pressure. And I'm trying to find something where it says that it was more than just mere pressure. The facts and circumstances are what bring pressure to the person who is in the death sentence. No, by the city, because you've got to be able to show that there's this overbearance for undue influence. The cases are very clear. The government always has a superior bargaining position in every situation with every person they bargain with. But that is in every single case. There is usually a differential in bargaining position. And the question is difference in bargaining position doesn't mean overbearance. It just means you can negotiate or you can hold fast to a position. But that's why we have courts. The tort system allows you to go to court to prove your claim and get the full damages you want. Maybe you could get more than $65,000 if you proved it. But maybe you could get nothing, too. So that's the assessment that you as a lawyer had to make and advise her. And I assume that that was done because you're the one that communicated with the city. I think it was you. Wasn't it you? It was me, Your Honor. And if you remember, they tried to take me out of the position by threatening my law license. So as far as me being an attorney, that's a factor for the jury to consider as well. I wanted to fix some things that were stated earlier. I did not help her write that. She wrote every – if you look at it, it's not the words of a lawyer. I told her I'm not telling you a single word to say. You tell the court what's on your heart and what happened to you. I did not write that for her. That's fair enough. And everything she says there is probably true. It is. But the question is, as a matter of law, when you're settling a tort case, does that make a difference? And the question is, she has to make a very difficult decision, and she expressed the difficulty in making the decision. But the question is, was she overborne by threats of the city, or did the city say, we'll condemn your house and all this stuff? There's none of that in the record. Well, your time is up. I'll give you 30 seconds to respond to my – That question about being overborne, that is answered by the jury looking at the curl factors. There is nothing in any law anywhere that says her having an attorney is the most important factor. It's not listed first. Let me just ask one question that's on my mind. It has to do with this business of once the city does have some indication that she thinks it's undue influence, she puts them on notice. They won't let her put that up there. It would seem, did the city then put any language on this release to say that you are now signing this voluntarily, knowingly, without any notion of undue influence? Is that on the release? No, I don't remember, but I will tell you what happened. By the way, it is called a release of all claims, and that's what they put in her hand at 630 in the morning while she's standing in her yard or in her bathrobe. That's what they had her sign, and a release of all claims. And so, no, she didn't have a chance to sue, but I will tell you what happened. They came back with that same release, and she wrote the language, and she said, I'm homeless, and I don't have any other choice. And what did they do after that? They said, Shane, you get that language out of there or she gets nothing. And they turned it down. Basically, they did not accept it. They came back with a three-page, it was one short page, and now it's three pages of things she's got to weigh. The problem with they didn't accept it didn't change how she viewed it. In other words, if she was homeless and she said she had no choice, they said, you've got to take that off. It didn't change that she was homeless or had no choice. It simply said, we won't let you sign it without putting it up there. That's the difference.  We've gone several minutes over, and we'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, James Andrew Wynn, DeAndrea Gist Benjamin